WAYNE ORDOS, #89037
1415 L Street, Suite 410
Sacramento, California  95814
Telephone:  (916) 556-1776
Attorney for Defendant Michael E. O'Neal

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>MICHAEL E. O'NEAL,<br><br>    Defendant | Case No.: S-06-0115-LKK<br><br>SENTENCING MEMORANDUM<br><br>Date:   July 20, 2010<br>Time:  9:15 a.m.<br>Judge: Hon. Lawrence K. Karlton |

Appearing before the court for sentencing is Michael E. O'Neal.  While living an otherwise honorable, law abiding life, O'Neal recognizes that his actions in this matter amount to his making the biggest mistake of his life.  Mr. O'Neal accepts full responsibility for his wrong doing and understands that his misjudgment will cause him to pay dearly for the rest of his life.  Mr. O'Neal comes before the court a contrite and humbled individual, prepared to accept the Court's sentence for his conduct.  Mr. O'Neal respectfully requests the Court's consideration of the following factors in arriving at its ultimate sentencing decision.

**BACKGROUND:**

Mr. O'Neal is 59 years old and the father of three grown children and two 10 year-old twin girls.  Although no longer with their mother, Mr. O'Neal plays a significant role in raising his two young daughters.  He shares custody of the children and visits with them every other weekend and some weekdays.  Mr. O'Neal's child support obligations have been suspended due to his current financial situation that came about after his involvement in this case.  As the presentence investigation report (PSR) points out, "this case has financially ruined the

defendant." Since 2007, the year that the American Law Center closed, Mr. O'Neal has struggled to find gainful employment due to his medical condition, the overall economic climate and, of course, his plea of guilty some four years ago.

Mr. O'Neal was finally able to find a job in May 2010 with Informatix, Inc., an information technology company that tracks child support payments. He is currently a contract employee for the company. He was hired for 2 months in order to assess his qualifications and aptitude for the position of general manager of the company. He earns $45 per hour, and hopes to resume making child support payments if he can successfully get through his assessment period. Needless to say, if Mr. O'Neal were incarcerated for some period of time he would lose his job, further impeding his ability to provide support for his children.

As previously stated, Mr. O'Neal has suffered from serious medical problems since 2000. Mr. O'Neal underwent femoral aortic bypass surgery in January of 2000 due to a blocked aorta. This caused cramping in his legs, which made it difficult for him to walk. He continues to suffer from related vascular ailments. Since his initial femoral aortic bypass surgery in January of 2000, he has undergone no less than five additional surgeries, all involving his vascular health problems. His most recent surgery, a right femoral artery pseudoaneurysm repair, was on April 1, 2010 at the Veteran's Affairs Medical Center in Sacramento. Afterward, he spent over four days in the hospital and he continues to need close monitoring by doctors. It is the fear of both Mr. O'Neal and his doctors that incarceration could negatively effect his fragile vascular condition. A copy of a letter from Mr. O'Neal to U.S. Probation chronicling his medical history is attached as Exhibit A. Mr. O'Neal's medical records were submitted to U.S. Probation for the preparation of the Presentence Report.

Mr. O'Neal cooperated with the U.S Attorney and Internal Revenue agents investigating this case from the day he entered his plea of guilty and has attempted to set the record straight and assist the government in bringing his codefendants to justice. Mr. O'Neal pled guilty and cooperated early on and played a significant role in the investigation of his codefendants, Wayne Majors, Leah Anderson and Sandra Villegas. Mr. O'Neal was interviewed on multiple occasions by investigating agents and he explained the roles that Majors, Anderson and Villegas played in

their scheme to defraud the taxing authorities.  He told the government he had a feeling that Majors, Anderson and Villegas were skimming money from the firm, but was not certain because he had no role in the skim perpetrated by his codefendants.  Mr. O'Neal was faced with what he viewed as a Hobson's choice of confronting his codefendants and losing his job or remaining quiet and maintaining his employment.  This, of course, was the point at which Mr. O'Neal committed the fatal mistake in judgment that will severely impact him for the rest of his days.

Although Mr. O'Neal admitted to knowingly signing the fraudulent tax returns, he had no role in the preparation of the fraudulent returns. These returns were prepared by codefendant Leah Anderson and submitted to O'Neal for signature.  Importantly, O'Neal did not receive any funds obtained by the codefendants by virtue of their illegal activities.  Mr. O'Neal was paid approximately $72k/year from revenues generated by the law practice for the legitimate legal work he performed.

Mr. O'Neal struggled to find work prior to landing his job at the Attorney Law Center and he was grateful for the opportunity to work and earn a better living.  O'Neal lived with a constant concern about his inability to support his two young kids.  O'Neal was placed in the untenable position of either confronting his codefendants about the perceived problems and or notifying the authorities about his suspicions of illegal activity.   Either course would have ultimately lead to his being fired.  As the record reflects, O'Neal wrongly chose to remain silent and keep his job.  Despite Mr. O'Neal's obviously fateful decision and seemingly irresponsible actions as an attorney, he has always taken full responsibility for his wrongdoing, making no excuses and blaming no one but himself for his current predicament.  Unlike his codefendants, Mr. O'Neal timely filed his personal tax returns and paid his personal taxes during this time.

In an effort to right his wrongs and further cooperate with the government, Mr. O'Neal hired Gerald Kumph, an independent CPA, to prepare proper and accurate tax returns for the American Law Center for the years in question.  This proved difficult as defendants Majors and Anderson continued to resist these efforts and actually tried to frustrate any proper reconciliation of the ALC books by the CPA firm hired by O'Neal.  Additionally, Mr. O'Neal sought

competent legal counsel for all American Law Center clients once the FBI and IRS raided the firm's offices and it became apparent that ALC would no longer be able to continue their representation.  Mr. O'Neal took this action because he did not want his clients to suffer or be damaged, in any manner, as a result of his failings and the illegal actions of his codefendants.

**SENTENCING RECOMMENDATION**

The PSR accurately calculates the advisory sentencing guidelines and criminal history category in this case for a total offense level of 13 and a criminal history category of I.  However, Probation recommended that Mr. O'Neal be sentenced to 30 days imprisonment and a 1 year term of supervised release in order to achieve the goals of sentencing set forth in 18 U.S.C. 3353(a).  The PSR points out that although Mr. O'Neal's conduct was serious, "it was not sophisticated or motivated by greed as he did not benefit from the fraud other than the fact that he was able to maintain employment by cooperating with Majors."  The PSR took into account the fact that Mr. O'Neal has no prior record of any kind, his license to practice law was suspended, and that this sentence was necessary in order to avoid unwarranted sentencing disparities among his codefendants.  The defendant anticipates the government making a motion for departure pursuant to Section 5K1.1 of the Sentencing Guidelines.  This motion will give the court wide discretion and permit the Court to impose any sentence that it sees fit under all of the circumstances presented.

The PSR acknowledges that Mr. O'Neal's role in the offense was less than any of his codefendants.  A downward departure from the sentencing recommendation in the PSR would achieve the goals of sentencing as set forth in 18 U.S.C. § 3353(a) as follows:

(1)  Nature and Circumstances of Offense and History and Characteristics of Defendant:
Mr. O'Neal committed this offense between the years of 1999 and 2001.  He has no prior contacts with the criminal justice system and has not been arrested or accused of any additional crimes since that time.  Mr. O'Neal played a minor role in the filing of the false tax return.

Majors, Anderson and Villegas were far more culpable and had very specific assignments in the unlawful scheme. As the PSR points out, Majors was controlling all operations of American Law Center and was assisted by Anderson and Villegas. Majors used O'Neal's name and license, with O'Neal's permission, in order to file the false returns. However, Mr. O'Neal received no proceeds from the unlawful skim as a result of his affixing his signature to the fraudulent returns.

(2) The Need for the Sentence Imposed:

(A) To Reflect the Seriousness of the Offense, and to Provide Just Punishment for the Offense:

Mr. O'Neal, in effect, has been on probation since 2006, due to the fact that he has had to abide by the conditions of release imposed by Pretrial Services and has been monitored continuously by U.S. Probation pending sentencing. Mr. O'Neal has also had his law license suspended and as a result has had extreme difficulty finding gainful employment. As the PSR points out, Mr. O'Neal has become financially devastated as a result of his crime. These presentence penalties all reflect the seriousness of his offense and provide just punishment, especially in relation to the sentences of his co-defendants.

(B) To Afford Adequate Deterrence to Criminal Conduct:

The loss of his ability to practice law, combined with the fact that Mr. O'Neal has been under the supervision of Pre-Trial Services and United States Probation since the entry of his guilty plea, provide adequate deterrence to Mr. O'Neal. Given that this incident was Mr. O'Neal's first run in with the law in his 59 years of life, the level of deterrence necessary is low and has been achieved.

(C) To Protect the Public from Further Crimes of the Defendant:

No sentence of incarceration or probation is necessary to protect the public from Mr. O'Neal as evidenced by the fact that the crime occurred approximately ten years ago and Mr. O'Neal has lived as a productive father and member of society during the interim.

(3) The Kinds of Sentences Available:

Pursuant to *United States v. Booker* and *United States v. Fanfan,* the guideline calculations are only advisory.  The Court has the ability to sentence Mr. O'Neal in any way it sees fit, whether it is release, probation, or incarceration.

(4) The Advisory Sentencing Guidelines Range:

The advisory sentencing guidelines in this case are 12-18 months but Probation has recommended 30 days incarceration and a year of supervised release.

(5) Pertinent Policy Statements of the Sentencing Guidelines:

§ 5H1.1 Age – USSC studies reflect that as age increases, recidivism rates decline – particularly after age 50. *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines*, A Component of the Fifteen Year Report on the U.S. Sentencing Commission's Legislative Mandate (May 2004).  Mr. O'Neal is 59 years old with no criminal conduct in the last ten years since the offense at issue in this case, and he poses the lowest risk of reoffending.

§ 5H1.4 Physical Condition – The Sentencing Guidelines allow for extraordinary physical impairment to serve as a basis for downward departure.  As previously noted, Mr. O'Neal has a history of very serious vascular health problems.  His last major surgery, for a right femoral artery pseudoaneurysm repair, was in April 2010.  He continues to be under the care of doctors and continues to suffer from impairments due to his medical condition.

§5H1.8 Criminal History - USSC studies reflect that a person with no prior arrests, a true "first offender", have extremely low recidivism rates and the lowest rates among all offenders. *Recidivism and the "First Offender",* A Component of the Fifteen Year Report on the U.S. Sentencing Commission's Legislative Mandate (May 2004).  Mr. O'Neal, having never been arrested for a crime in his life until this offense, is a true "first offender".  Coupled with his age, O'Neal presents no real threat of recidivism.

§5K1.1 Substantial Assistance to Authorities – Mr. O'Neal has fully cooperated with the government and anticipates the benefit of a 5K1.1 motion from the government. There is no doubt that Mr. O'Neal's cooperation was a significant factor in his codefendants' decision to plead guilty and end this case without a long and costly trial.

(6) Unwarranted Sentence Disparities Among Defendants

The most important 18 U.S.C. § 3353(a) factor in Mr. O'Neal's case is §3353(a)(6). As the PSR points out, Mr. O'Neal agreed to be listed as the president and sole shareholder of American Law Center, yet the financial and day-to-day operations of the firm were controlled by non-attorney's Majors, Anderson and Villegas. Majors was in charge of all operations of American Law Center and all business decisions were made by Majors and Anderson. Anderson handled and controlled all the movement of money and Villegas was primarily involved in the administration of the firm. Anderson directly controlled the preparation of the fraudulent tax returns for American Law Center. The PSR also correctly states that Majors, Anderson and Villegas concealed the true amount of taxable income due generated by the firm by underreporting income and overstating expenses. They used a number of bank accounts and shell entities to conceal the actual taxable income, and from the shell entity bank accounts, the funds were diverted for their personal use, using aliases to further conceal their identities. These are sophisticated means under USSG § 2T1.4(b)(2), and as the PSR correctly states, O'Neal was not involved in this part of the scheme.

Agents concluded that Majors, Anderson and Villegas skimmed approximately $277,000 from the firm but that there was no evidence that Mr. O'Neal personally received any of the skimmed money. Anderson and Villegas received sentences significantly below their advisory guideline range because of Major's poor health. Majors received a reduced sentence based on his physical condition so a sentence below the guideline ranges was imposed on Anderson and Villegas. Anderson received a sentence of 5 years probation and 30 days intermittent confinement, while Villegas was sentenced to 30 days BOP and 3 years supervised release.

The PSR noted that in order to avoid unwarranted sentencing disparity, Mr. O'Neal should be sentenced to 30 days imprisonment and 1 year supervised release. However, it is Mr. O'Neal's contention that this recommended sentence does not adequately guard against sentence disparity. As explained above, Mr. O'Neal's involvement was significantly less than Anderson and Villegas, but this is not evident in probation's recommended sentence. Mr. O'Neal's cooperation with investigators played a major role in bringing closure to the government's case against Majors, Anderson and Villegas. Additionally, Mr. O'Neal is being sentenced over four years after entering his guilty plea because he has been awaiting the resolution and sentencing of his three co-defendants. Therefore, in order to avoid unwarranted sentence disparity Mr. O'Neal's sentence should be significantly lower than his three codefendants.

For all of the above-stated reasons, and any other that the Court deems just and proper, Mr. O'Neal respectfully requests that this Court order him released as a convicted felon. In support, Mr. O'Neal requests that the Court consider his strict adherence to his conditions of release and the absence of any violation during the last four years while the defendant has been under the supervision of Pre-Trial Services and United States Probation. This is a just resolution to this case because Mr. O'Neal has effectively been on probation since he pled guilty in April 2006. The PSR acknowledges that Mr. O'Neal's role in the crime was less than any of his co-defendants. This resolution sufficiently addresses the need to avoid disparity in sentences among codefendants and achieves the goals of sentencing as set forth in 18 U.S.C. § 3353(a).

Mr. O'Neal will live with the burden of being a convicted felon for the rest of his life. Mr. O'Neal respectfully requests the ability to begin assembling the remains of a once promising life, so that he can continue with his employment and the support of his family once again.

DATED: July, 13 2010

Respectfully submitted,

/s/ Wayne L. Ordos
WAYNE L. ORDOS
Attorney for Defendant
MICHAEL E. O'NEAL